IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

FILED
2012 JAN 30 PM 2:49
U.S. DISTRICT COURT
MIDDLE DISTRICT OF TN

| | |
|---|---|
| STACI LEE HUNTER, | ) |
| Plaintiff, | ) |
| VS. | ) CIVIL ACTION NO. _____ |
| | ) JURY DEMAND |
| ATHENA ENTERPRISES, LLC and | ) |
| MAHEESH "MIKE" PATEL, | ) |
| Defendant. | ) |

## COMPLAINT

COMES now your Plaintiff, and as facts in support of her Complaint, would show unto the Court as follows:

### JURISDICTION:

1. This Court has jurisdiction of Plaintiff's Fair Labor Standards (FLSA) claim pursuant to 29 U.S.C. §216(b).

2. This Court has supplemental jurisdiction over the following claims, pursuant to 28 U.S.C. §1367, as they are so related to the FLSA claim, over which this Court has original jurisdiction, that the Tennessee statutory and common law claims form part of the same case or controversy:

    a. Statutory and common law whistleblower claims;

    b. Tennessee common law retaliatory/wrongful termination claim; and

    c. Statutory and common law tortious breach of contract claims.

1

## VENUE:

3. This Honorable Court has venue of this action pursuant to 28 U.S.C. §1391(a)(2) because Defendant Athena Enterprises LLC ("Athena") and Maheesh (Mike) Patel ("Patel") reside and are located within the Middle District of Tennessee, and a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

## THE PARTIES:

4. Plaintiff is a citizen and resident of Rutherford County, Tennessee and has been at times pertinent to the facts of this cause.

5. On information and belief, Plaintiff submits that Defendant Athena Enterprises, LLC, (Athena) is a Tennessee domestic limited liability company and has been at times pertinent to the facts of this cause, with a principal business address of 2521 Elm Hill Pike, Nashville, TN 37214.

6. On information and belief, Plaintiff submits that Defendant Maheesh "Mike" Patel has been a resident of Davidson County, Tennessee at times pertinent to the facts of this cause.

## FACTS:

7. On information and belief, it is submitted that at times relevant to the instant litigation, Defendant Athena has owned and/or operated a motel known as the Best Western Airport Inn in Nashville.

8. On information and belief, it is submitted that at times relevant to the instant litigation, Defendant Patel has possessed an ownership interest in Athena.

2

9. On information and belief, it is submitted that at times relevant to the instant litigation, Defendant Patel has been the manager of the Best Western Airport Inn ("BWAI") in Nashville.

10. With reference to all facts alleged in this Complaint, and as will be presented in evidence at trial, Defendant Patel has acted as the agent of Defendant Athena.

11. Plaintiff became employed by Defendant Athena in April of 2010, as a front desk clerk at BWAI.

12. At times relevant to the instant litigation, Plaintiff's immediate supervisor has been Margaret McCarty, whose position has been front desk manager.

13. Ms. McCarty's supervisor is Defendant Patel.

14. Attached to this Complaint as Exhibit A is a true and exact copy of page 5 from Defendant's Employee Handbook, and which specifies Defendant's purported policy regarding the payment of overtime to non-exempt employees. The first and third paragraphs of Defendant's three-paragraph policy regarding overtime as stated in its Employee Handbook are as stated as follows:

> Employees who are considered non-exempt (i.e., paid on an hourly basis) are entitled to overtime pay at the rate of one-and –one-half times their regular pay for hours worked in excess of 40 hours per work week. They will not be paid overtime for hours in excess of 8 per day, or for work on Saturdays, Sundays, holidays, or regular days of rest, if the 40 hour requirement has not been met.
>
> Payments to non-exempt employees will be made according to state and federal wage and hour laws. No employee will work overtime without direct, written authorization from his/her immediate supervisor.

15. At all times while Plaintiff was employed by Athena, she was a non-exempt employee for FLSA wage and hour purposes.

3

Case 3:12-cv-00124   Document 1   Filed 01/30/12   Page 3 of 12 PageID #: 3

16. The federal law known as the "Fair Labor Standards Act of 1938" provides that for non-exempt employees such as Plaintiff they shall be paid at a premium rate, also known as overtime, of at least 1.5 times the regular hourly rate for any time worked by the employee in excess of 40 hours per week. 29 U.S.C. §207(3)(7).

17. Shortly after she became employed by Athena, Plaintiff began working overtime hours for which she should have been paid because she had worked more than 40 hours during certain weeks.

18. After Plaintiff began working hours for which she should have been paid overtime, she did not receive overtime compensation.

19. On approximately five occasions, Plaintiff approached Patel about Athena's failure to pay her and co-employees overtime which was owed pursuant to the FLSA and Defendant's written policy as stated in its Employee Handbook. Defendant Patel's standard response to Plaintiff was: "I gave you a chance by hiring you. I could just cut your hours or I could just fire you and work your shift."

20. In February 23, 2010, Plaintiff filed a complaint with the United States Department of Labor ("DOL") under the FLSA in which she alleged that Athena had failed to pay her and co-workers overtime for weeks in which they had worked more than 40 hours, which was in violation of the FLSA at 29 U.S.C. §207(a)(1).

21. U. S. Department of Labor Wage and Hour investigator, Emily Erspalmer investigated the complaint filed by Plaintiff against Athena, and her investigation caused her to conclude that Plaintiff and four co-employees were owed overtime by Athena pursuant to the FLSA. The co-workers who were also owed overtime are: Jody Wilson; Margaret McCarty; Daniel Howell; and Tim Lankford.

4

22. On information and belief, it is submitted that Defendants knew, or at least strongly suspected, that Plaintiff was the person who had made the complaint about unpaid overtime to the DOL.

23. In July and October of 2011, Plaintiff's work hours were reduced by Defendants for no apparent or logical reason, and when similarly situated co-employees' hours were not reduced.

24. At some point, Defendants were notified by the DOL that they had until August 29, 2011, in which to pay Plaintiff and co-employees overtime they were owed.

25. As of August 29, 2011, Plaintiff had not been paid overtime owed her by Defendant Athena. This prompted her to approach Defendant Patel to inquire about the overtime payment. He stated he thought that the payment had already been made, and then pretended to be rummaging through some documents before delivering payment to Plaintiff a check for her owed overtime in the approximate amount of $389.00.

26. On September 7, 2011, Plaintiff was given a written disciplinary warning because she had called her employer at 4:45 p.m. on September 5, 2011, to state that she had a fever and would not be in to work that day. A copy of the written warning is attached hereto as Exhibit B.

27. In Plaintiff's response to the written Disciplinary Warning dated September 7, 2011, she replied that she was home sick on September 5, 2011, with a fever. She also expressed that she believed she was the victim of retaliation.

28. On information and belief, Plaintiff submits that her overtime payment that was obtained as a result of the complaint she filed with the U. S. Department of Labor was among the smallest of the payments made to the various employees.

29. In approximately late October or early November of 2011, Plaintiff was assisting Patel's wife, Heena Patel, in storing food Ms. Patel had purchased for the breakfast bar at BWAI. Ms. Patel stated she was upset about the complaint for overtime pay that had been made to the DOL, and because of another complaint made to the Best Western parent company about the condition of Defendants' motel premises. Ms. Patel stated to Plaintiff that once the identity of the person(s) who was making the complaints was known, that person(s) would be fired.

30. Plaintiff's regular hours to work were 7:00 a.m. to 3:00 p.m.

31. Plaintiff was not scheduled to work on Monday, November 7, 2011, or Tuesday, November 8, 2011.

32. Plaintiff experienced a gastrointestinal illness during the evening hours of November 8, 2011. She realized she would be unable to work on Wednesday, November 9, 2011. While quite ill, and at approximately 12:45 a.m. on November 9, 2011, Plaintiff called her supervisor, Margaret McCarty, to advise that she would not be able to appear at work for her shift that began at 7:00 a.m. Plaintiff informed Ms. McCarty of the nature of her illness. Ms. McCarty instructed Plaintiff to keep her updated as to her condition, and that her shift for November 9, 2011, would be covered.

33. At approximately 4:46 p.m. on November 9, 2011, Plaintiff called Ms. McCarty at her home to tell her that she was still sick, she had no idea how long the virus would affect her, and that she would call Ms. McCarty the following day. Ms. McCarty replied that it was fine for Plaintiff to stay home and attempt to get well.

34. On Thursday, November 10, 2011, at approximately 10:21 a.m., Plaintiff called Ms. McCarty at work to advise that she was still very ill and weak, but that she could try to come in for a 3:00 p.m. shift that day, and that she could work the following day, which had previously

6

been scheduled as an off day for Plaintiff in order to make up for time she had lost. Ms. McCarty replied to Plaintiff that she did not want her to come to work to spread the virus around, and that her next work day was the following Saturday, November 12, 2011, for which Plaintiff was scheduled to begin work at 3:00 p.m. Ms. McCarty instructed Plaintiff to come in on November 12, 2011, at approximately midday.

35.     At approximately 12:18 p.m. on Thursday, November 10, 2011, Ms. McCarty left a voice mail on Plaintiff's home phone telling her that her services were no longer needed by Defendants, and that the termination decision was made by Defendant Patel, allegedly because a customer/guest had complained about Plaintiff.

36.     In any event, Plaintiff was terminated without any prior warning, and without being asked if she had an explanation for any alleged complaint.

37.     Plaintiff submits that the excuse for her termination provided by Ms. McCarty and stated by her to have been determined by Mr. Patel is false and nothing but a pretext.

38.     Plaintiff's rate of pay at the time she was terminated from her front desk clerk job was $7.25 per hour.

39.     As the direct and proximate result of Plaintiff's termination, she has suffered lost pay, front and back, humiliation, embarrassment, and mental anguish.

40.     Attached hereto as Exhibit C is a true and exact copy of pages 17 and 18 of Defendant's Employee Handbook which deal with sick leave. The following paragraph, relative to the sick leave policy, appears at page 18 of the Employee Handbook:

> The Company reserves the right to ask for a doctor's certificate of illness or disability, or require employees to submit to a medical examination by a qualified physician selected by the Company. In the event a doctor's certificate of illness is required, any associated costs will be borne by the employer.

41. Plaintiff was not asked for a doctor's certificate of illness or disability, nor was she requested to submit to a medical examination with reference to her missing work due to her illness on November 9, 2011, and November 10, 2011.

42. In point of fact, Ms. McCarty told Plaintiff that her absence from work on November 9, 2011, and November 10, 2011, due to her illness, had nothing to do with her termination.

## PLAINTIFF'S FLSA CLAIM:

43. Plaintiff incorporates by reference and re-alleges all allegations made in the preceding paragraphs 1 through 42 herein.

44. The FLSA provides that it is a prohibited act for an employer to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to the Fair Labor Standards Act of 1938. 29 U.S.C. §215(a)(3).

45. Defendants' termination of Plaintiff was done in retaliation for Plaintiff's having successfully initiated and pursued a complaint for overtime owed Plaintiff and co-workers by Defendant Athena.

46. Pursuant to the FLSA at 29 U.S.C. §216(b), Plaintiff is entitled to back pay, plus interest, plus an additional equal amount as liquidated damages. Plaintiff also seeks front pay pursuant to the same statute in an amount to be determined by the Court.

47. Plaintiff seeks an award of attorney's fees and costs, pursuant to 29 U.S.C. §216(b).

## PLAINTIFF'S COMMON LAW RETALIATORY/ WRONGFUL TERMINATION CLAIM AGAINST ATHENA:

48. Plaintiff incorporates by reference and re-alleges all allegations made in the preceding paragraphs 1 through 47 herein.

49. By filing a charge or complaint with the U. S. Department of Labor for Defendants' violation of the FLSA with reference to overtime owed Plaintiff and co-workers, Plaintiff engaged in activity protected by the FLSA at 29 U.S.C. §215(a)(3).

50. Plaintiff was terminated as the direct and proximate result of her having attempted to assert her rights and the rights of co-workers to overtime pay pursuant to the FLSA. Thus, her termination constitutes a violation of the clear public policy embodied in the FLSA.

51. Alternatively, Plaintiff submits that a substantial factor in Defendants' decision to terminate her was her exercise of her rights pursuant to the FLSA.

52. The violation of Plaintiff's rights, as guaranteed by the FLSA, was done intentionally by Defendant Patel acting individually and on behalf of Athena.

53. Plaintiff submits that she is entitled to compensatory damages in the amounts of back pay and front pay which she is owed, along with compensation for humiliation, embarrassment and mental anguish. She demands a judgment against Athena for her common law retaliatory discharge claim for $500,000.00 in compensatory damages and $500,000.00 in punitive damages.

## PLAINTIFF'S STATUTORY AND COMMON LAW WHISTLEBLOWER CLAIMS AGAINST ATHENA:

54. Plaintiff incorporates by reference and re-alleges all allegations made in the preceding paragraphs 1 through 53 herein.

55. At times pertinent to the facts of this cause, Plaintiff was an employee of Defendant Athena which was Plaintiff's employer for purposes of the Tennessee Public Protection Act (TPPA) as defined at T.C.A. §50-1-306(1) and (2).

56. The FLSA is a federal civil statute applicable in the state of Tennessee that is intended to protect the public health, safety and welfare.

57. Plaintiff was terminated by Defendants in retaliation for her having reported, opposed and objected to Defendants' violation of the FLSA with reference to Plaintiff and her co-workers.

58. Defendants' termination of Plaintiff was solely for her reporting and opposing Defendants' failure to comply with the FLSA.

59. Alternatively, Plaintiff submits that her reporting to the U. S. Department of Labor Defendants' nonpayment of overtime to her and co-workers, and her opposition to the unlawful treatment she and co-workers received from Defendants constituted substantial factors in Defendants' decision to discharge Plaintiff.

60. As the direct and proximate result of Defendants' violation of the TPPA, Plaintiff seeks compensatory damages against Athena in the amount of $500,000.00 for back pay with interest thereon; front pay in an amount to be determined by the Court; damages for humiliation, embarrassment and mental anguish; and an additional amount as attorney's fees pursuant to T.C.A. §50-1-304(d)(2).

61. For Plaintiff's common law whistleblower claim, she seeks a judgment against Athena for back pay plus interest; front pay, damages for humiliation, embarrassment, and mental anguish. Plaintiff seeks a judgment of $500,000.00 in compensatory damages. Plaintiff

10

Case 3:12-cv-00124 Document 1 Filed 01/30/12 Page 10 of 12 PageID #: 10

also seeks an award of $500,000.00 in punitive damages against Defendant Athena with reference to her common law whistleblower claim.

## PLAINTIFF'S STATUTORY AND COMMON LAW
## TORTIOUS INTERFERENCE CLAIMS AGAINST DEFENDANT PATEL:

62. Plaintiff incorporates by reference and re-alleges all allegations made in the preceding paragraphs 1 through 61 herein.

63. From the date she was hired by Defendant Athena through the date of her termination, Plaintiff was a party to a legal contract of employment with Athena.

64. Defendant Patel was aware of Plaintiff's legal contract of employment with Athena at all times pertinent to the facts of this cause.

65. Defendant Patel maliciously intended to and did induce Athena to breach its contractual obligations to Plaintiff simply because she opposed and refused to remain silent about Defendants' violation of the FLSA with reference to overtime she and co-workers were owed.

66. Due to the actions of Defendant Patel, Athena did breach its contract of employment with Plaintiff.

67. Athena's breach of its employment with Plaintiff was caused by the intentional actions of Defendant Patel.

68. Defendant Patel acted with malice toward Plaintiff in that he engaged in a willful violation of a known right possessed by her.

69. The actions of Defendant Patel were detrimental to the economic and other interests of Defendant Athena.

70. With reference to Plaintiff's termination, Defendant Patel acted for his own best interests instead of the best interests of Defendant Athena.

11

71. Defendant Patel by virtue of Plaintiff's termination violated T.C.A. §47-50-109 by inducing and procuring the breach of Plaintiff's employment contract with Athena and he is therefore liable for treble the amount of damages resulting from or incident to the breach of Plaintiff's employment contract.

72. As the direct and proximate result of Defendant Patel's violation of T.C.A. §47-50-109, Plaintiff seeks an award of compensatory damages of $500,000.00 for back pay with interest thereon; front pay; damages for humiliation, embarrassment and mental anguish; and an award of an additional sum representing trebling the compensatory damages Plaintiff suffered by Defendant Patel's procurement of the breach of her employment contract.

73. With reference to Plaintiff's common law tortious interference of her employment contract claim against Defendant Patel, Plaintiff seeks compensatory damages in the amount of $500,000.00 for back pay; front pay; damages for humiliation, embarrassment, and mental anguish, and she seeks an additional amount of $500,000.00 in punitive damages against Defendant Patel.

Respectfully submitted,

K. STEVEN WALDRON, BPR #2767
Attorney for Plaintiff
WALDRON, FANN & PARSLEY
202 W. Main Street
Murfreesboro, TN 37130
(615) 890-7365